UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---X

JHAMYIA PEARSON,

Plaintiff,

-against-

STONEY CLOVER LANE LLC,

Defendant.

---X

**MEMORANDUM & ORDER**

25-cv-2629 (NRM) (TAM)

**NINA R. MORRISON**, United States District Judge:

Plaintiff Jhamyia Pearson, a Black woman, brings claims against Defendant Stoney Clover Lane LLC, her former employer, under (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; (2) 42 U.S.C. § 1981; and New York State and City law. Plaintiff alleges that she was subjected to race-based discrimination, retaliation, and a hostile work environment while she was employed by Defendant as a sewing specialist. Presently before the Court is Defendant's motion to dismiss. For the reasons outlined below, Defendant's motion is granted in its entirety.

## FACTUAL BACKGROUND

For purposes of this motion, the Court is limited to the well-pleaded facts in the complaint, which the Court must presume to be true. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021). The Court may only look to external documents if they are attached to the complaint, incorporated by reference, or otherwise "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Courts consider Equal Employment Opportunity Commission ("EEOC") charges and

accompanying narratives as integral to complaints, and thus the allegations contained in these documents are properly considered in deciding this motion to dismiss. *Marcus v. Leviton Mf'g Co., Inc.*, 15-CV-656, 2016 WL 74415, at *1 n.1 (E.D.N.Y. Jan. 6, 2016).

Plaintiff Jhamyia Pearson ("Plaintiff") is a Black woman who was employed as a sewing specialist by Defendant Stoney Clover Lane, LLC ("Defendant" or "SCL") from September 6, 2022 to October 19, 2023, when she resigned. Second Amended Compl. ("SAC") 5,[1] ECF No. 25; Mem. of L. in Supp. of Def. Mot. to Dismiss ("Def. Mem.") 6, ECF No. 34-4. Plaintiff alleges that she was discriminated against based on her race. SAC at 4. She consequently brings claims against Defendant under Title VII for disparate treatment, hostile work environment, retaliation, and constructive discharge, and under 42 U.S.C. § 1981 for retaliation and discrimination. Pl.'s Mem. of L. in Opp'n to Def. Mot. to Dismiss ("Pl. Memo") 4–6, ECF No. 42. She also brings pendent claims under New York State and New York City law.

Plaintiff alleges eight incidents of race discrimination:[2]

1. From January 2023 to October 19, 2023, Plaintiff was denied opportunities to do embroidery work despite her requests to do so. Supporting Decl. of Charging Party Jhamyia Pearson ("EEOC Ltr.") ¶¶ 2–3, ECF No. 26; SAC at 5. Plaintiff alleges several specific instances in support of this claim. First, she alleges that she was not offered the embroidery patch position when it was available. EEOC

[1] Citations to the SAC use ECF pagination rather than paragraph numbers because only certain portions of the SAC are formatted as consecutively numbered paragraphs.

[2] Throughout this opinion, for ease of reference, these incidents will be referred to as "event (1)," "event (2)," etc.

Ltr. ¶ 3. Next, she asserts that she was encouraged not to apply to the "machine team" and was told that she would need cross training before applying. *Id.* Although Plaintiff requested this training, it was never provided to her. *Id.* She also alleges that she was not told about an opening for a digital embroidery position, for which a white coworker, Beverly August, was cross-trained and hired. *Id.* ¶ 4. Lastly, when SCL made a new embroidery team, they hired all white coworkers. *Id.*

2. Plaintiff alleges that she was assigned additional non-sewing duties with higher frequency than non-Black employees. *Id.* ¶ 9.

3. Plaintiff alleges that she "faced constant criticism and micro-management" and was told to work faster. *Id.* ¶ 11.

4. When SCL rearranged the warehouse layout, Plaintiff was assigned a station at the center of the sewing department in front of the management window, where Plaintiff could be more closely watched. *Id.* ¶ 12.

5. Plaintiff alleges that she and other Black employees were "not taken seriously" and "belittled." *Id.* ¶ 13.

6. On March 21, 2023, Plaintiff was harassed by a colleague named Bartholomew "in connection with the fact that, in addition to being a Black woman, [Plaintiff is] also a Type 1 diabetic." *Id.* ¶ 14. Plaintiff claims, "Mr. Bartholomew approached me and, without permission, touched me, intentionally lifting up the sleeve of my blouse to expose a continuous glucose monitor." *Id.* Plaintiff alleges that he "called over other employees to also view" the glucose monitor and joked that he had mistaken the monitor for a bomb. *Id.* When Plaintiff complained to HR's Ms. Marshall, Marshall issued Plaintiff a verbal warning, "purportedly for some language [she] had used during [the] assault." *Id.* ¶ 15. Plaintiff told Marshall that she wanted to file a formal report, to which Marshall responded that she already had. *Id.* When Plaintiff asked to see the report, Marshall would not provide a copy to Plaintiff. *Id.* Further, Plaintiff complained about the same coworker, Bartholomew, taking photos and videos of her and "making [] spiteful comments toward [her] to [her] coworkers regarding [her] ability to sew," but SCL did nothing. *Id.* ¶ 16. In contrast, Plaintiff alleges that when August, a white coworker, complained about another coworker for speaking to her inappropriately, SCL fired him. *Id.* ¶ 17.

7. Plaintiff alleges that SCL provided water bottles to upper management but not to non-management employees, who had to use the "contaminated" water fountain. *Id.* ¶¶ 26–27. However, Plaintiff was given verbal permission to receive a water bottle when she requested one. *Id.*

8. On October 18, 2023, Plaintiff's coworker told her that he had been advised not to let Plaintiff work on a National Football League ("NFL") project because she was "not capable." SAC at 5. He did ultimately permit her to work on the project. *Id.*

Plaintiff resigned on October 19, 2023, but alleges that she was constructively discharged. *Id.*

As to Plaintiff's retaliation claims, Plaintiff alleges one protected activity on August 24, 2023. After talking to Chief Financial Officer ("CFO") Jack Shreyhane about what she perceived as a hostile work environment and Plaintiff's lack of sewing/ embroidery opportunities, Plaintiff sent an email memorializing her complaint to Shreyhane and copied the warehouse director, Nellie Arroyo, and head of human resources, Morgan Burke. *Id.* Arroyo and Plaintiff met that day, but Shreyane and Burke did not address Plaintiff's complaint. *Id.*

Plaintiff also alleges incidents of general mistreatment of Black employees at SCL. She first points specifically to a Black coworker, Mikenzie LaBranche. Management denied LaBranche's request for a sewing work assignment, stating that others "will cut threads faster." EEOC Ltr. ¶ 18. Plaintiff alleges this was part of a pattern of discrimination, because another employee told her that SCL had similarly refused to hire a Black employee previously. *Id.* When LaBranche expressed his frustrations, management accused him of being "confrontational." *Id.* ¶ 19. LaBranche was also denied cross-training and other opportunities to advance. *Id.* ¶

20. Additionally, LaBranche was given a raise of 20 cents per hour, which Plaintiff alleges was "significantly less than several of [his] Caucasian and Hispanic peers." *Id.* Plaintiff claims that SCL retaliated against him and treated him with hostility. *Id.* ¶ 21. LaBranche was later fired, and during his termination meetings, SCL required another Black employee — Mr. Headley — to be present. Mr. Headley allegedly told LaBranche that management wanted to limit the likelihood of LaBranche becoming hostile and/or disruptive — and, as alleged by the Plaintiff, management presumably conceived of Mr. Headley's presence in the room as a mitigating factor. *Id.* ¶ 22.

Plaintiff further alleges that a new hire for the warehouse position was white and not capable, and a Black employee ended up having to do most of the work. When the white employee resigned, SCL did not promote that Black employee to the position. *Id.* ¶¶ 23–24. Additionally, SCL allegedly implemented bag checks, from which Plaintiff alleges white and other non-Black members of management seemed to be exempt. *Id.* ¶ 28.

Plaintiff generally alleges that SCL's "image" is very white, with no Black people in leadership and with its social media pages not being diverse. *Id.* ¶¶ 29–30. Plaintiff reports that one former employee's Glassdoor review of SCL stated that they sent dress codes with hairstyles of only white women. *Id.* ¶ 30. Finally, Plaintiff alleges that SCL's "wholly Caucasian corporate management even seemed to deliberately avoid interaction with the company's few Black employees whenever possible." *Id.* ¶ 31.

## PROCEDURAL BACKGROUND

Plaintiff invokes this Court's federal question and supplemental jurisdiction. 28 U.S.C. §§ 1331, 1367. Plaintiff's causes of action are based on the eight alleged instances of discrimination outlined above, as well as her resignation. Pl. Mem. 4–6.

On August 9, 2024, Plaintiff filed an EEOC charge; she received a Notice of Right to Sue on February 5, 2025. SAC at 6. Plaintiff timely commenced this action within 90 days of receipt of the right-to-sue letter from the EEOC, filing her original complaint on May 6, 2025. *See generally* Compl., ECF No. 1.

Plaintiff filed her first amended complaint on June 12, 2025. First Amended Compl., ECF No. 6. On August 18, 2025, Defendant filed a motion to dismiss, ECF No. 9, accompanied by a memorandum of law, ECF No. 9-8, a declaration from human resources manager Tricia Marshall in support, ECF No. 9-6, and a declaration from Defendant's counsel Brian Capitummino in support, ECF No. 9-1. On November 12, 2025, the Court granted Plaintiff's motion to file a second amended complaint. Dkt. Order dated Nov. 12, 2025. Plaintiff filed and served her Second Amended Complaint on December 10, 2025, which mooted Defendant's original motion to dismiss. Defendants then filed the instant motion to dismiss on December 31, 2025. ECF No. 34. Plaintiff responded to Defendant's motion to dismiss on February 16, 2026, with a memorandum of law in opposition, *see generally* Pl. Mem., and Defendant filed a reply on March 2, 2026, Mem. of L. in Reply ("Def. Reply"), ECF No. 47.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. Courts "must construe [a complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote*, 9 F.4th at 106–07. However, courts must also "disregard conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action.'" *Id.* at 107 (quoting *Twombly*, 550 U.S. at 555).

Because Plaintiff is proceeding *pro se*, the Court must "liberally" construe her submissions and interpret them "to raise the strongest arguments that [they] suggest[]." *Peralta v. New York City Dep't of Educ.*, No. 21-CV-6833 (EK) (LB), 2023 WL 6201507, at *3 (E.D.N.Y. Sep. 22, 2023) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases). However, "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' even for a *pro se* plaintiff." *Peralta*, 2023 WL 6201507 at *3 (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

## DISCUSSION

### I. Title VII Claims

#### A. Timeliness

Plaintiffs claiming discrimination under Title VII must file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action or, if claimant has filed with a State or local agency, within 300 days. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015); 42 U.S.C. § 2000e–5(e). "This statutory requirement is analogous to a statute of limitations." *Van Zant v. KLM Royal Dutch* Airlines, 80 F.3d 708, 712 (2d Cir. 1996); *Missick v. City of New York*, 707 F. Supp. 2d 336, 347 (E.D.N.Y. 2010); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982). Whether the 180- or 300-day period applies varies based on "whether the violation occurs in a State or political subdivision that has an agency with authority to grant or seek relief." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 119 (2002).

"The EEOC regards a charge as 'timely' when it is received within 300 days of the alleged discriminatory act, forwarded to the deferral state agency, and the deferral-state agency has waived its rights to the 60-day exclusive jurisdiction period." *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 327 (2d Cir. 1999); *see* 29 C.F.R. § 1601.13(a)(4)(ii)(A). The Second Circuit has held that the 300-day period applies when a plaintiff in New York files with only the EEOC. *Tewksbury*, 192 F.3d at 327.

Plaintiff filed with the EEOC on August 9, 2024, which renders any Title VII claims based on events prior to October 14, 2023, time-barred. SAC at 6; Def. Reply at 6. Events for which Plaintiff does not provide dates — (events (1), (2), (3), (4), (5), and most of (7)) — are time-barred because Plaintiff cannot show that her charges

were timely filed as to those events. *Frazier v. Stanley*, No. 16-CV-804 (RJS), 2018 WL 11585450, at *14 (S.D.N.Y. Nov. 29, 2018) ("Because neither EEOC complaint includes a single date[,] . . . [Plaintiffs] cannot show that their charges were timely filed."). Only event (8), which occurred on October 18, 2023, and any claims that may relate to Plaintiff's resignation, which occurred on October 19, 2023, are timely.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's Title VII discrimination and retaliation claims based on events (1) through (7) as untimely. *Siddiqi v. N.Y. City Health & Hosps, Corp.*, 572 F. Supp. 2d 353, 366 (S.D.N.Y. 2008) ("[C]laims of discrimination and retaliation based on the disciplinary charge that was issued [outside the charge period] are [all] time barred").

The Court now turns to Plaintiff's Title VII claims that are not time barred: her constructive discharge claim based on her resignation and her disparate treatment, retaliation, and hostile work environment claims based on event (8), concerning the NFL project.

**B. Constructive Discharge**

Constructive discharge can be an independent cause of action under Title VII. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 142–43 (2004). Despite the Second Amended Complaint not explicitly including a constructive discharge cause of action, the Court construes it liberally to include such a claim, as Plaintiff alleges that she only "resigned on October 19, 2023, because the environment had become intolerable." Pl. Mem. at 3. Plaintiff further asserts (in her arguments about

timeliness) that "a constructive discharge claim accrues on the resignation date . . . Discrete acts that occur within the limitations period are actionable." *Id.*

It is well settled that "a voluntary resignation is not an adverse employment action unless the employee was constructively discharged." *Chanval Pellier v. Brit. Airways, Plc.*, No. 02-CV-4195, 2006 WL 132073 (DGT), at *4 (E.D.N.Y. Jan. 17, 2006) (citing *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987)). The Court finds that Plaintiff has not adequately pled that her resignation amounted to a constructive discharge, and thus the Court will not treat Plaintiff's resignation as an adverse employment action.

The key inquiry for constructive discharge claims is whether "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Suders*, 543 U.S. at 141. Here, Plaintiff's allegations — including, *inter alia*, that she was belittled in general, non-racialized terms; was closely monitored at work; was unfairly criticized for her work; was assigned non-sewing work with higher frequency than she preferred; and was denied favorable embroidery assignments — are insufficient to plead a constructive discharge claim. Courts have held that mere dissatisfaction with a job assignment does not establish a constructive discharge claim under Title VII. *See, e.g.*, *Pollock v. Shea*, 568 F. Supp. 3d 500, 513 (S.D.N.Y. 2021) (no constructive discharge when Plaintiff was denied desired positions after reorganization); *Petrosino v. Bell Atlantic*, 385 F.3d 210, 230–31 (2d Cir. 2004) (finding that supervisor's recommendation that plaintiff transfer to another department for better promotion opportunities when no

such promotion would be possible for over a year was not sufficient for a constructive discharge claim because quitting was not the only way to extricate herself from intolerable conditions).

Similarly, criticism — even unfair criticism — of a plaintiff's work, standing alone, is insufficient to allege a constructive discharge claim. *Zenie v. Coll. of Mount Saint Vincent*, No. 20-CV-3535, 2021 WL 6105373, at *2 (2d Cir. Dec. 21, 2021); *see also Molinari v. Costco Cap. Inc.*, No. 24-CV-02594 (HG), 2025 WL 1135428, at *4 (E.D.N.Y. Apr. 17, 2025) (noting that neither "unfair and unwarranted treatment" nor "hypercritical supervision" are sufficient to assert constructive discharge).

Because Plaintiff's claim does not meet the higher burden needed to establish constructive discharge, this claim fails. The Court dismisses Plaintiff's Title VII constructive discharge claim.

### C. Disparate Treatment

The Court next considers whether Plaintiff has sufficiently pled that the treatment she experienced on or about October 18, 2023 — when Plaintiff was told she could not work on the NFL project — is sufficient to state a claim for discrimination based on race under Title VII. For a plaintiff's Title VII discrimination claims to survive a motion to dismiss, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated

by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Plaintiff's Second Amended Complaint fails to state a claim based on event (8), the NFL project incident, because Plaintiff does not sufficiently allege that she suffered an adverse employment action. The Supreme Court's recent decision in *Muldrow v. City of St. Louis* lowered the standard for the degree of harm a plaintiff must experience to have been a victim of an adverse employment action; the *Muldrow* court held that a plaintiff challenging an employment transfer under Title VII "need show only some injury respecting her employment terms or conditions." 601 U.S. 346, 348 (2024). However, even when viewing her allegations in light of the lower *Muldrow* standard, Plaintiff did not experience actual harm because she did not allege any facts that show she was injured with respect to any term or condition of her employment.

First, and most significantly, while Plaintiff alleges that she was initially told that her managers did not want her to work on the NFL project, she ultimately *was* allowed to work on that same project. Just as "[a] mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment[,]" *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024) (internal citation omitted), simply being told that one or more of her supervisors had not selected her for a project, without any other tangible,

adverse consequences — such as ultimately being excluded from that project and its attendant benefits, which she was not — is insufficient.

Moreover, "[r]emoving additional responsibilities, especially where a [p]laintiff does not allege the import of those responsibilities with respect to a term or condition of her employment, and where the rate of pay and benefits remain the same, is . . . not an adverse employment action." *Slater v. NYU Langone Health Sys.*, No. 24-CV-03711 (OEM) (SIL), 2025 WL 2208292, at *6–7 (E.D.N.Y. Aug. 4, 2025); *cf. id.* (finding that receiving lower evaluation scores can amount to an adverse employment action if a plaintiff alleges that the score left them "worse off by dampening the prospects of a promotion, raise, or bonus" (citation modified)). In *Erno v. N.Y. State Off. of Info. Tech. Serv.*, the court held that being denied the opportunity "'to assist with a high profile project'" was not sufficient to plausibly allege an adverse employment action. No. 19-CV-1457 (NAM) (TWD), 2020 WL 2736563, at *6 (N.D.N.Y. May 26, 2020). Not only did Plaintiff fail to allege any facts that demonstrated the importance of the NFL project for any other aspect of her employment, but she did ultimately get selected to work on the project.

Second, Plaintiff's allegation that she was "closely monitored while sewing," SAC at 5, is insufficient to allege an adverse action. Increased scrutiny, without any allegations of harm as a result, is not an adverse employment action. *See Schulman v. Dep't of Educ. of City of N.Y.*, No. 24-CV-8322 (AT), 2026 WL 573298, at *6 (S.D.N.Y. Mar. 2, 2026) ("Increased scrutiny is not an adverse employment action[.]"); *McGrath v. Thomson Reuters*, No. 10-CV-4944 (JSR) (JCF), 2012 WL 2119112, at *12

(S.D.N.Y. Apr. 30, 2012) (finding no adverse employment action based on increased scrutiny when Plaintiff did not present "any evidence that these interventions resulted in a materially adverse change in the conditions of his employment"), *report and recommendation adopted*, 2012 WL 2122325 (June 12, 2012), *aff'd*, 537 F. App'x 1 (2d Cir. 2013); *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 354 (S.D.N.Y. 2006) ("Nor can Defendants' alleged micro-management of Plaintiff constitute an adverse employment action.").

Because Plaintiff does not allege any adverse change in employment based on the incidents in her Second Amended Complaint that are not time barred, her Title VII disparate treatment claim must be dismissed.

**D. Retaliation**

Plaintiff's Title VII retaliation claim also does not survive the motion to dismiss. To adequately plead a retaliation claim, a plaintiff must "plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [plaintiff], (2) because [plaintiff] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. As discussed *supra*, Plaintiff has not adequately alleged that her initial exclusion from the NFL project incident was discriminatory, nor that it constituted or resulted in an adverse employment action. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's Title VII retaliation claim.[3]

[3] Plaintiff also alleges that her resignation occurred within the 300-day period. However, Plaintiff's resignation cannot provide grounds for her retaliation claim because there was no constructive discharge, and thus no adverse employment action. *Rother v. N.Y. State Dept. of Corr. and Cmty. Supervision*, 970 F. Supp. 2d 78, 96

### E. Plaintiff's Title VII Hostile Work Environment Claim is Untimely

Plaintiff alleges a Title VII hostile work environment claim, which is also subject to the 300-day charge period. To render this claim timely, Plaintiff invokes the continuing violations doctrine. This doctrine is "an exception that may extend the limitations period for 'all claims of discriminatory acts committed under [an ongoing policy of discrimination] even if those acts, standing alone, would have been barred by the statute of limitations.'" *Hinds v. PSEG Long Island LLC*, No. 23-CV-08701 (RER) (LGD), 2026 WL 266010, at *5 (E.D.N.Y. Feb. 2, 2026) (quoting *Bright v. Coca Cola Refreshements [sic] USA, Inc.*, No. 12-CV-234 (BMC), 2014 WL 5587349, at *3 (E.D.N.Y. Nov. 3, 2014). The continuing violations doctrine is available because the "very nature" of hostile work environment claims, unlike claims based on discrete acts of discrimination, "involves repeated conduct." *Morgan*, 536 U.S. at 115. Under this exception, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993); *see also Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012).

---

(N.D.N.Y. 2013) (holding that the "[p]laintiff cannot make out a claim for retaliatory constructive discharge" because the court found no constructive discharge at all); *O'Dell v. Trans World Ent. Corp.*, 153 F. Supp. 2d 378, 394 (S.D.N.Y. 2001) (dismissing, at the summary judgment stage, retaliation claims based on constructive discharge because the Court found that Plaintiff's constructive discharge claims were insufficient), *aff'd*, 40 F. App'x 628 (2d Cir. 2002).

Plaintiff alleges that, because event (8), the NFL project incident,[4] occurred within the 300-day period, this renders the earlier, otherwise time-barred incidents cognizable under her hostile work environment claim.[5] Pl. Mem. at 3. However, Plaintiff's hostile work environment claim is still untimely because the timely event is not plausibly discriminatory.

1. **The NFL Project Incident Is Not Plausibly Discriminatory**

To qualify as a continuing violation, the timely incident that "anchors" the hostile work environment claim must, first, "be sufficiently related to the prior events so that they can be said to be part of the 'same' hostile work environment," *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 91 (2d Cir. 2014), and, second, be a "plausibly discriminatory incident," *Hinds*, 2026 WL 266010, at *13.

Plaintiff's claim fails at the second element, as she does not sufficiently allege that NFL project incident constituted discrimination based on race. Plaintiff did not allege that LaBranche's statements to her were motivated by her race; she merely alleges that LaBranche told her that "he had been advised not to let [Plaintiff] sew a specific NFL special project because [she] was 'not capable,'" SAC at 5; *see also McFarlane v. Cmty. Health Ctr. of Richmond, Inc.*, No. 25-CV-00410 (NCM) (RML), 2025 WL 3625900, at *5 (E.D.N.Y. Dec. 15, 2025) (finding that the timely act did not

---

[4] As with Plaintiff's retaliation claim, the Court need not consider Plaintiff's voluntary resignation as it does not constitute a discriminatory event.

[5] Plaintiff attempts to invoke the continuing violations doctrine to revive all her Title VII claims, but this exception is only available for hostile work environment claims. *Collins*, 156 F. Supp. 3d at 458 (noting that the continuing violations doctrine does not apply to claims based on discrete discriminatory acts).

invoke continuing violations doctrine partly because "plaintiff does not allege that she was terminated *because* of her race").

Plaintiff also fails to allege sufficient facts to show that similarly situated employees were treated differently. *Hinds*, 2026 WL 266010, at *8 (finding no discriminatory motive when plaintiff did not "name specific coworkers and their race, color, national origin, job title, and supervisors, in order to allege that they were similarly situated to him" (citations omitted)). LaBranche, who worked on the NFL project, *see* SAC at 5, cannot be a comparator that supports a finding of discrimination because he is also Black, *see* EEOC Ltr. ¶18. Although Plaintiff does not explicitly name other comparators, construing her *pro se* complaint liberally, the Court infers from the Second Amended Complaint and the EEOC Letter that there were other non-Black employees who worked on the NFL project. *See* EEOC Ltr. ¶6 ("In sharp contrast, my Caucasian and Hispanic counterparts . . . seemed to have no difficulty getting [embroidery] opportunities."). However, Plaintiff has not alleged any facts that support the finding that these comparators were "similarly situated in all material respects." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (citations omitted); *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *Kiseleva v. Greenspan*, 755 F. Supp. 3d 367, 382 (S.D.N.Y. 2024). Despite the presumed existence of non-Black employees who were able to work on the project, Plaintiff still "fails to describe who these people are, what their responsibilities were, how their workplace conduct compared . . . or how they were treated." *Westbrook v. City of New York*, No. 23-CV-3164 (VSB), 2026 WL 802613, at *5 (S.D.N.Y. Mar. 23,

2026) (citations omitted). "[C]onclusory allegations, with no names of individuals who were similarly situated and no facts . . . are not enough." *Id.* (citations omitted). Here, Plaintiff alleges no facts about these employees' identities, much less their skill level, job responsibilities, or workplace conduct. And finally, as noted *supra,* at some point after she had this conversation with LaBranche, Plaintiff was herself assigned to work on the NFL project.

Plaintiff has not alleged any other facts that show that the NFL project incident was plausibly discriminatory. Thus, this event cannot be used to anchor the continuing violations doctrine, and Plaintiff's hostile work environment claim is time-barred. Accordingly, the Court dismisses Plaintiff's Title VII hostile work environment claim.

## II. Section 1981 Claims

The statute of limitations for Section 1981 claims is four years, and thus all the events that Plaintiff alleges in her Second Amended Complaint were timely filed under this statute. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). For the reasons that follow, however, Plaintiff has not plausibly pled that SCL violated her right to be free from discrimination under Section 1981.

### A. Discrimination

#### 1. Legal Standard

For both Title VII and Section 1981 claims, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is [first] a member of a protected class, [second] was qualified, [third]

suffered an adverse employment action, and [fourth] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. For Section 1981 claims, "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media*, 589 U.S. 327, 341 (2020); *Lively v. WAFRA Inv. Advisory Grp.*, Inc., 6 F.4th 293, 303 n.5 (2d Cir. 2021) ("Application of the but-for causation standard at the pleading stage is not affected . . . by [the Circuit's] decisions in the Title VII context applying a more lenient standard at the pleading stage—even assuming that such a standard remains appropriate after *Comcast*[.]");[6] *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256 (GHW), 2020 WL 6274826, at *16 n.10 (S.D.N.Y. Oct. 24, 2020) (noting that plaintiffs must plead but-for causation under Section 1981 claims but not for Title VII claims).

There is no dispute that Plaintiff is Black and thus is a member of a protected class. As to the second element, to successfully plead discrimination, plaintiffs must show that they were qualified for the position. *Hyunmi Son v. Reina Bijoux, Inc.*, 823 F. Supp. 2d 238, 243 (S.D.N.Y. 2011) (holding that plaintiff's Section 1981 discrimination claim was insufficient because plaintiff's "termination was not based on being Korean but based on her failure to work overtime without compensation").

---

[6] In *Comcast*, the Supreme Court held that, to plead discrimination in Section 1981 claims, a plaintiff must plead that race was a "but-for" cause of the adverse action, rejecting the argument that a plaintiff need only plead that race was a "motivating factor." 589 U.S. at 338.

As to the third element, Plaintiff must plead that she suffered an adverse employment action. *Littlejohn*, 795 F.3d at 311. This pleading requirement is substantially identical to the pleading standard applied in Title VII disparate treatment claims. *See Brown v. City of Syracuse*, 673 F.3d 141, 151 (2d Cir. 2012) (applying the same adverse employment action standard for both Title VII and Section 1981 claims).

Finally, as to the fourth element, "[t]o make [an] initial showing [of discrimination], [a plaintiff] may rely on direct evidence of [] discrimination or point to circumstances giving rise to an inference of . . . discrimination." *King v. Aramark Servs. Inc.*, 96 F.4th 546, 563 (2d Cir. 2024) (citations omitted). Plaintiff does not rely on direct evidence of discrimination. *See Ashmeade v. Amazon.com*, No. 23-CV-4331 (KMK), 2026 WL 880645 at *10 (S.D.N.Y. Mar. 31, 2026) ("[T]he [third amended complaint] contains no allegations of direct discrimination. While [p]laintiff claims that he was disparaged by [the defendant], he has not identified any statements she made that included any mention of [p]laintiff's race." (citations omitted)); *Cooper v. Templeton*, 629 F. Supp. 3d 223, 230 (S.D.N.Y. 2022) ("Plaintiff's complaint thus fails to allege that [d]efendants made any remarks, whether publicly or privately, that could be viewed as directly reflecting discriminatory animus."), *aff'd sub nom. Cooper v. Franklin Templeton Invs.*, No. 22-2763-CV, 2023 WL 3882977 (2d Cir. June 8, 2023); *Orrego v. Knipfing*, 564 F. Supp. 3d 273, 284 (E.D.N.Y. 2021) (finding no overt acts of discrimination and thus no direct evidence of discrimination). The Court will

accordingly look at the sufficiency of Plaintiff's allegations in support of an inference of discrimination.

The Court may make an inference of discriminatory intent based on various circumstances, including "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (citation modified). Plaintiff must also meet the slightly higher standard for Section 1981 claims as outlined by the *Comcast* Court; that is, the but-for causation standard. 589 U.S. at 338.

Plaintiff asserts the "same operative facts as [her Title VII claims]" for her Section 1981 discrimination and retaliation claims. Pl. Mem. at 6.

2. **Event (8) and Plaintiff's resignation are not adverse employment actions**

As discussed *supra*, event (8) (involving the NFL project incident) is neither plausibly discriminatory nor an adverse employment action and thus cannot underpin Plaintiff's Section 1981 discrimination claim. Similarly, her resignation, also discussed *supra*, cannot serve as the basis for a Section 1981 claim because it did not amount to a constructive discharge. *Moore v. Uncle Giuseppe's Marketplace*, No. 22-CV-544 (BMC), 2024 WL 4350691, at *4 (E.D.N.Y. Sep. 30, 2024) (finding that plaintiff's voluntary resignation was not a constructive discharge and, thus, no adverse employment action occurred for purposes of plaintiff's Section 1981 discrimination claim).

### 3. Events (1), (2), and (4) Do Not Support a Finding of Discriminatory Intent

Although courts have held that failure to promote can constitute an adverse action, the plaintiff must also have been qualified for the position. *Pollock*, 568 F. Supp. 3d at 508 (finding adverse employment action for failure to promote when Plaintiff had alleged that she was entitled to promotions). Here, Plaintiff has not pled that she was qualified for the work assignment she was denied. In fact, she has arguably pled that she was *not* qualified for the embroidery positions at the time she was not given those assignments, because she needed additional cross-training. EEOC Ltr. ¶ 3.

Plaintiff also claims that she was denied the opportunity for training when comparators were not. *Id.* ¶ 4. Plaintiff uses comparators with whom plaintiff alleges "w[ere] similarly situated in all material respects." *Brown*, 756 F.3d at 230 (citations omitted). However, Plaintiff's use of comparators here is insufficient.

For event (1), Plaintiff merely alleges that Beverly August and "newly hired white coworkers" were allowed on embroidery teams. SAC at 5. To establish similarity, Plaintiff states that Beverly August was "one of [her] Caucasian counterparts" and that four other coworkers hired for the digital embroidery team were "Caucasian coworkers." EEOC Ltr. ¶ 4. She does not mention any facts about their training, functions, and/or skills being similar enough to warrant plausible connection with Plaintiff's race and her work environment. *See Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 21 (2d Cir. 2013) (noting, in a Section 1983 case, that Plaintiff's comparators were not similarly situated without any factual support "that

a single alleged comparator performed similar job functions, was subjected to the same disciplinary standards, engaged in similar conduct, or was treated more favorably [than her]"). Plaintiff does not explain how August or other "Caucasian coworkers" had the same skill level, job title, or were in any way similarly situated. This is insufficient. *See Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016) (finding Plaintiff's use of comparators insufficient when Plaintiff "did not allege that she and her co-worker had similar job descriptions or responsibilities"); *Stinson v. City Univ. of New York*, No. 17-CV-3949 (KBF), 2018 WL 2727886, at *12 (S.D.N.Y. June 6, 2018) (finding comparators were distinct because they held different job titles and had different circumstances).

Plaintiff alleges for event (2) that she was assigned additional non-sewing duties at higher frequency than non-Black employees. EEOC Ltr. ¶ 9. Plaintiff states that "it seemed that, while [her] Caucasian peers were only expected to do their own jobs, [she] was obliged to do not only [her] own but often also anyone (and, sometimes, everyone) else's, as well." *Id.* Again, Plaintiff has failed to allege any information beyond the fact that these comparators were "Caucasian peers." As with event (1), without more, this is insufficient, as she asserts no facts demonstrating that these comparators were similarly situated to her or other Black employees.

Finally, Plaintiff alleges in event (4) that she was assigned to a spot in the rearranged warehouse layout where she could be more closely watched. *Id.* ¶ 12. She states that non-Black coworkers were given a choice in their workstation location, whereas she was not. *Id.* Plaintiff names "Caucasian and Hispanic peers (like

August) as her only comparators. *Id.* As with events (1) and (2), such allegations are insufficient.

4. **Events (3) Is Not an Adverse Employment Action**

Plaintiff alleges in event (3) that she "faced constant criticism and micro-management of [her] work, coupled with pressure to work at an accelerated pace." *Id.* ¶ 11.

First, for the same reasons the Court found no adverse employment action for event (8), the Court finds that event (3) was not an adverse employment action; it is well settled that, without more, increased scrutiny (including subjecting a plaintiff to micro-management) is not an adverse employment action. *See, e.g.*, *Schulman*, 2026 WL 573298, at *6; *McGrath*, 2012 WL 2119112, at *12; *Hill*, 467 F. Supp. 3d at 354.

Here, Plaintiff does not allege any adverse change in employment that was a result of this heightened scrutiny; thus, she has not pled that she was subjected to any adverse employment action. *Schulman*, 2026 WL 573298, at *6.

5. **Event (5) Does Not Give Rise to an Inference of Discriminatory Intent**

Plaintiff alleges that her and Black colleagues were "belittled," "not taken seriously in work meetings and conversations," or "told [they] were being 'confrontational.'"[7] EEOC Ltr. ¶ 13. While she does allege derogatory treatment in general terms, her Second Amended Complaint nonetheless lacks the kinds of specific

---

[7] Here, Plaintiff also asserts that her and other Black employees were "directed . . . to do additional work." EEOC Ltr. ¶ 13. Plaintiff asserted the same cause of action in event (2), which the Court found *supra* insufficiently alleged discriminatory intent, so the Court does not assess that claim again here.

allegations and examples of discriminatory treatment she and other Black employees experienced that are necessary to survive a motion to dismiss. *See, e.g., Andrews v. Fremantlemedia, N.A., Inc.*, 613 F. App'x 67, 69 (2d Cir. 2015) ("A plaintiff's 'naked allegation' of racial discrimination on the part of a defendant is too conclusory to survive a motion to dismiss." (citation modified)); *Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) (plaintiff's "'naked allegation' that they were treated differently from non-Muslim, non-Albanians cannot demonstrate a plausible entitlement to Title VI relief") (quoting *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988))); *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (finding no plausible inference of discriminatory intent when Plaintiff alleged merely that "defendant acted based on the plaintiff's race and color").

For example, Plaintiff does not provide comparators to support her conclusion that Black employees were treated differently. She also does not provide any examples of the different treatment that Black employees may have experienced as compared to their non-Black counterparts. Thus, she has not offered any facts from which the Court could find that SCL harbored an intent to discriminate, nor that, but for Plaintiff's and other Black employees' race, they would not have been treated differently.

6. **Event (6) is not plausibly discriminatory**

In event (6), Plaintiff alleges that she "faced racial discrimination and harassment" by a colleague named Jason Bartholomew. EEOC Ltr. ¶ 14. Plaintiff reported this incident to human resources employee Trishia Marshall, who allegedly issued Plaintiff a verbal warning "purportedly for some language [Plaintiff] had used

during [Bartholomew's] assault." *Id.* ¶ 15. Plaintiff also alleges that "within just a few days management instructed [her] to work at [Bartholomew's] workstation, ignoring [her] safety concerns." *Id.* When Plaintiff told Marshall that she wanted to file a formal report regarding Bartholomew's actions, Marshall "claimed that it had already been done, but when [she] asked . . . for a copy, [Marshall] could not . . . provide one." *Id.*

Plaintiff also alleges that Bartholomew "record[ed] and/or [took] pictures . . . and [made] spiteful comments toward [Plaintiff] to [her] coworkers regarding [her] ability to sew." *Id.* ¶ 16. Defendant allegedly again "ignored [Plaintiff's] complaints . . . and failed (again) even to discipline [Bartholomew], mu[ch] less discharge him from its employ." *Id.* Plaintiff offers Beverly August as a comparator, who reported a coworker, who Plaintiff calls "Ivan," for inappropriate speech. She alleges that the coworker that August reported was later fired. *Id.* ¶ 17.

However, even assuming the truth of these allegations, Plaintiff fails to allege any facts that permit the Court to infer that they were rooted in discrimination based on race. "The plaintiff's and comparator's circumstances must bear a reasonably close resemblance, but need not be identical." *Brown*, 756 F.3d at 230. Here, Plaintiff does not plead relevant factors, such as the contents of August's complaint or the nature of Ivan's termination, that would suggest that the decision to terminate Ivan (the person August complained about) but not Bartholomew (the person Plaintiff complained about) was due to race discrimination.

#### 7. **Event (7) is not an adverse employment action nor plausibly discriminatory**

Lastly, Plaintiff alleges that Defendant provided bottled water to upper management but not to non-management employees, who had to use the "contaminated" water fountain." EEOC Ltr. ¶¶ 26–27. Plaintiff concedes, however, that, after asking for bottled water, someone in management did say she could have some. *Id.* ¶ 27. This event is not an adverse employment action, nor does it provide "minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

Plaintiff did assert in her charge to the EEOC that this practice "reminded one of the days of Jim Crow." EEOC Ltr. ¶ 26. However, in her Second Amended Complaint, Plaintiff does not allege that her race was the reason that she was initially not given bottled water; instead, she states that it was because that perk was (at least initially) reserved for members of upper management team at SCL. Accordingly, because Plaintiff has insufficiently alleged a disparate treatment claim under Section 1981, the Court dismisses this claim.

### B. Retaliation

"Retaliation claims under Section 1981 are 'subject to the same standards' as retaliation claims under Title VII." *Mitchell*, 745 F. Supp. 3d at 103 (quoting *Banks*, 81 F.4th at 275 (2d Cir. 2023)). To survive a motion to dismiss, a plaintiff must "plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [plaintiff], (2) because [plaintiff] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.

Plaintiff states that her protected activity occurred on August 24, 2023, when, after talking to CFO Jack Shreyhane about a hostile work environment allegation and Plaintiff's lack of sewing/embroidery opportunities, Plaintiff sent an email about her complaint to Shreyhane and copied the warehouse director, Nellie Arroyo, and head of human resources, Morgan Burke. SAC at 5. Plaintiff fails to specify any dates of alleged acts of retaliation besides the date of her incident with Bartholomew (event (6) on March 21, 2023), the date of the NFL project (event (8) on October 18, 2023), and the date of her resignation (October 19, 2023).

Because the any retaliatory action must necessarily come after the protected activity that was its alleged cause, event (6) (what she describes as her troubling interactions with her co-worker, Bartholomew) cannot be acts of retaliation because they occurred before Plaintiff's alleged protected activity (when she made complaints about Bartholomew to management). *McIntyre v. Longwood Cent. Sch. Dist.*, 658 F. Supp. 2d 400, 414 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 44 (2d Cir. 2010) (noting that a causal relationship for retaliation claims can be based on temporal proximity). Although event (8) and her resignation came after the date of her protected activity, as explained *supra*, neither of these events were adverse employment actions. Plaintiff thus fails to sufficiently allege retaliation caused by any protected activity.

The Court grants Defendant's motion to dismiss Plaintiff's Section 1981 retaliation claims.

### III. The Court Declines to Exercise Jurisdiction Over Plaintiff's State and City Law Claims

Plaintiff brings NYSHRL claims under N.Y. Exec. Law Section 296 and NYCHRL claims under N.Y.C. Admin. Code Section 8-107. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Because Plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state and local law claims. Plaintiff's claims are dismissed without prejudice for Plaintiff to pursue those claims in state court.

* * *

"Leave to amend is ordinarily freely granted when a motion to dismiss is granted." *eBC, Inc. v. Map Techs.*, LLC, No. 09-CV-10357 (CS), 2011 WL 12847702, at *10 (S.D.N.Y. May 17, 2011). However, "the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). For *pro se* plaintiffs, "[w]hile district courts should generally not dismiss *pro se* claims without affording leave to amend, it need not do so when amendment would be futile." *Cancel v. New York City Hum. Res. Admin./Dep't of Soc. Servs.*, 527 F. App'x 42, 44 (2d Cir. 2013); *Malester v. Adamo*, No. 09–9347, 2010 WL 5065865, at *4 (S.D.N.Y. Dec. 8, 2010) ("A motion for leave to amend should be

denied when allowing such an amendment would be futile in that it could not withstand a motion to dismiss for failure to state a claim.").

Here, the Court has already twice permitted Plaintiff to amend her complaint. Most of Plaintiff's Title VII claims are time-barred, and the Court finds that an amendment to Plaintiff's timely claims would be futile. *Houston v. Manheim-New York*, 475 F. App'x 776, 780 (2d Cir. 2012) (finding no abuse of discretion in dismissing a *pro se* complaint without leave to amend because the plaintiff "provided no basis to conclude that his amendment would not have been futile"); *Cancel*, 527 F. App'x at 44 (finding no abuse of discretion when district court denied leave to amend after "the district court had already permitted [the plaintiff] to amend his complaint once, and nothing in his amended complaint suggested that he would be able to state a valid § 1981 or equal protection claim if he were granted leave to amend a second time"); *cf. Hunt v. Consol. Edison Co. of New York, Inc.*, No. 18-CV-7262 (MKB), 2021 WL 3492716, at *8 (E.D.N.Y. Aug. 9, 2021) ("In addition, because Plaintiff has not corrected this deficiency after two opportunities to do so, and when asked, counsel stated that Plaintiff was not able to identify any relevant vacancies, the Court denies leave to further amend this claim."). For these reasons, the Court concludes that providing Plaintiff with leave to amend her complaint a third time is not warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff's Second Amended Complaint fails to state a claim under either Title VII or Section 1981, and the Court declines to exercise jurisdiction over Plaintiff's New York State and City law claims. Accordingly,

Defendant's motion to dismiss Plaintiff's Second Amended Complaint is granted in its entirety, and the Court denies Plaintiff leave to amend.

**SO ORDERED.**

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: September 28, 2026
Brooklyn, New York